Mark H. Plager (SBN: 192259)
mark@plagerschack.com
Michael L. Schack (SBN: 128784)
michaels@plagerschack.com
PLAGER SCHACK LLP
16152 Beach Boulevard, Suite 207
Huntington Beach, CA 92647
Phone: (714) 698-0601
Fax: (714) 698-0608

Counsel for Plaintiff, ALORICA INC.

**UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF CALIFORNIA, SOUTHERN DIVISON**

| | |
|---|---|
| ALORICA, INC., a Delaware corporation,<br><br>Plaintiff,<br>vs.<br><br>BOSTON CONSULTING GROUP, INC., a Massachusetts corporation, and BCG DIGITAL VENTURES, an operating Division of Boston Consulting Group, Inc., a Massachusetts entity of unknown form.<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR:**<br><br>**(1) Declaratory Relief;**<br>**(2) Intentional Interference with Prospective Business Relations;** ***and***<br>**(3) Negligent Interference with Prospective Business Relations.**<br><br>**AND JURY DEMAND** |

Plaintiff, Alorica Inc., by and through its undersigned counsel, for their Complaint against Defendants BOSTON CONSULTING GROUP, INC. a Massachusetts corporation, and BCG DIGITAL VENTURES, an operating Division of Boston Consulting Group, Inc., a Massachusetts entity of unknown form, aver as follows:

## THE PARTIES

1. Plaintiff Alorica Inc., is a Delaware corporation, authorized to conduct business in the State of California with a principal office located in Irvine, California.

2. Defendant Boston Consulting Group, Inc. is a Massachusetts corporation with a principal place of business located at 200 Pier 4 Boulevard, Boston, Massachusetts 02210.

3. Upon information and belief, BCG Digital Ventures, is an Operating Division of Boston Consulting Group, Inc., a Massachusetts corporation, with a local office located at 1240 Rosecrans Avenue #600, Manhattan Beach, California 90266.

## JURISDICTION AND VENUE

4. This is an action for declaratory relief under Declaratory Judgment Act, of the United States, Section § 2201 of Title 28, United States Code.

5. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to Section 1332(a) of Title 28 of the United States Code. Venue is proper in this district because the acts complained of occurred in this judicial district.

## FIRST CAUSE OF ACTION

## FEDERAL DECLARATORY RELIEF

6. On or about April 16, 2019, the Parties entered in a Mutual Nondisclosure Agreement, effective March 25, 2019, to facilitate discussions about, and the evaluation of a potential business relationship between the parties for the joint development of an artificial intelligence computer based customer

/ / /

service tool to assist call center customer service representatives in answering consumer product questions (hereinafter the "AI Tool').

7. On or before June 5, 2019, the Parties entered into an oral agreement whereby the parties agreed to work together, pool their inventive ideas and funds in a joint venture to perfect and market the AI Tool, and install the AI Tool as a pilot for "Beta-Testing" with Plaintiff's customer, a nationwide brick and mortar retailer ("Customer 1"). Thereafter, the parties jointly began operating in furtherance of the endeavor with the intention to memorialize the venture in writing.

8. On or about June 12, 2019, Defendants sent to Plaintiff a Master Service Agreement which Plaintiff reviewed, revised and returned on June 15, 2019. Despite not finalizing and executing a Master Service Agreement, in the year following the oral agreement, the Parties continued to jointly operate in furtherance of the common goal of creating a useable and valuable AI Tool, including jointly expending resources (financial and manpower) to develop, create, and actually implement the AI Tool. Thus, by their conduct, the parties affirmed the joint venture agreement.

9. At some point in 2019, the Parties provided Customer 1with access to the AI Tool. Since June 2020, Customer 1 has continued to use and enjoy the AI Tool resulting in better customer satisfaction for Customer 1's shoppers.

10. On January 15, 2020, Defendant BCG's Senior Partner and Managing Director acknowledged the existence of a joint venture between the Parties, and the value of each Parties' intangible contributions to the joint venture:

> We have always been interested to work with Alorica because you bring significant value and because of the working relationships we have developed together over

the last 2 years. We take no position on what Alorica's intangibles are worth (hopefully they are really really high ☺) because **in the spirit of partnership** the last thing we would ever want to do is to try and talk down the intangible value of **our partners**, and we don't want to have to be in the place to trumpet (and we think the BCGDV number if you tried to quantify it is very large) how great we think our intangible value is to you guys.

. . .

We just think that's a mentally unhealthy way to start what should be a fun **journey together**. Net-net we have always had **a spirit of an equal partnership** and would expect that structure of the company and cap table to reflect the principles above. Ultimately, as mentioned, **venture** success is most important for us and our brand, so we would rather not participate in a venture if we know its not checking all the venture success learnings day 1 because we don't want you or ourselves to fail.

We have also tried to be what we hope are more than fair **partners** in terms of how we have handled to date and what creativity we have been willing to apply in the current Alorica cash situation. Working for a year without pay and without a formal contract is a strong signal of our faith in **Alorica as a good, fair partner** – it's not something we really ever do or need to do. We

> hope this flexibility signals that we want this venture to succeed and that we think not only about our own needs. **But that's the spirit of partnership we want this venture to have.** (emphasis added).

11. On or about January 21, 2020, the Parties agreed that 20-25% of the proposed newly created entity would be owned by some form of an Employee Stock Ownership Plan (ESOP).

12. On or about February 14, 2020, the Parties approved their respective capital contributions to the venture but not the timing of the capital contributions.

13. Pursuant to the joint venture agreement the parties jointly developed, created, produced, beta-tested and implemented the AI Tool, which was implemented for Plaintiff's client, Customer 1 in 2019 and has been in continuous use since such time.

14. On October 2, 2020, Defendants served a cease and desist letter upon Plaintiff threatening to lock-out Alorica and Customer 1, from the AI Tool and the server on which the AI Tool is hosted, effective October 7, 2020 at 5:00 p.m. Pacific Time.

15. An actual controversy exists between Plaintiff and Defendants relating to the legal rights and duties of the respective parties arising out of the fiduciary relationship between Defendants and Plaintiff and the agreements relative to Alorica and Alorica's client's right to access the AI Tool.

16. Plaintiff contends that if the aforementioned acts threatened by Defendants were performed it would be in direct contravention of and with an utter disregard for their prior agreements, promises, declarations, and the fiduciary duty of Defendants to Plaintiff.

/ / /

17. Defendants contend they are not acting in contravention of or disregard for his/her agreements, promises, declarations, and fiduciary duty to Plaintiff if they decline or foreclose Plaintiff and/or Plaintiff's client's access to the AI Tool and the server on which the AI Tool is hosted.

## SECOND CAUSE OF ACTION

## INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

18. Plaintiff asserts and realleges paragraphs 1 through 17 as if set forth fully herein.

19. Plaintiff and Customer 1 are in an economic relationship that continues to result in an economic benefit to Plaintiff.

20. Defendants know of the relationship between Plaintiff and Customer 1.

21. Defendants wrongfully and without cause threatened and actually precluded, restrict and otherwise terminate Plaintiff and Plaintiff's customers' access to the Tool.

22. By engaging in this conduct, Defendants intend to disrupt Plaintiff's relationship with Customer 1, or otherwise know that disruption of the relationship is certain or substantially certain to occur as a proximate result of Defendants' activities to preclude, restrict or otherwise terminate access to the Tool.

23. The relationship between Plaintiff and Customer 1is in the process of being disrupted.

24. Plaintiff was harmed in an amount which exceeds the jurisdictional requirements of Section 1332(a) of Title 28 of the United States Code.

25. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

**THIRD CAUSE OF ACTION**

**NEGLIGENT INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

26. Plaintiff asserts and realleges paragraphs 1 through 17 as if set forth fully herein.

27. Plaintiff and Customer 1are in an economic relationship that results in ongoing economic benefit to Plaintiff.

28. Defendants know or should have known of the relationship between Plaintiff and Customer 1.

29. Defendants failed to act with reasonable care resulting in the wrongful termination, restriction and foreclosure of Plaintiff and Plaintiff's customer's access to the Tool.

30. By failing to undertake reasonable care and engaging in the wrongful conduct set forth above, Defendants action is a substantial factor in the disruption of Plaintiff's economically beneficial relationship with Customer 1.

31. The relationship between Plaintiff and Customer 1is in the process of being disrupted.

32. Plaintiff is harmed in an amount which exceeds the jurisdictional requirements of Section 1332(a) of Title 28 of the United States Code.

33. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

/ / /

/ / /

WHEREFORE, Plaintiff prays judgment as follows:

(a) That it be adjudged and determined that Defendants, their agents, servants, employees, and attorneys have no right terminate, foreclose, or otherwise restrict Plaintiff and Plaintiff's customer's access to the AI Tool and/or the server on which the AI Tool is hosted;

(b) The Defendants be permanently enjoined and restrained from terminating, restricting or otherwise foreclosing Plaintiff and Plaintiff's customer's access to the AI Tool and the server on which the AI Tool is hosted;

(c) The defendants pay compensatory damages adequate to compensate Plaintiff in an amount which exceeds the jurisdictional requirements of Section 1332(a) of Title 28 of the United States Code;

(d) An assessment against Defendants for Plaintiffs' costs, attorney's fees, and expenses; and

(e) Such further relief as this Court deems to be just and appropriate.

Dated: October 6, 2020 **PLAGER SCHACK LLP**

By: /s/ *Mark H. Plager*
**Mark H. Plager**
**Michael L. Schack**
**Attorneys for Plaintiff, ALORICA INC.**

**Verification**

I, **DAN MONTENARO**, declare as follows:

1. I am an officer of Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of the facts and events set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that to the best of my knowledge he factual statements in this Complaint are true and correct.

Executed on October 6, 2020.

**DAN MONTENARO**, Declarant

**JURY DEMAND**

Plaintiff, Alorica Inc., hereby demands a trial by jury.

Dated: October 6, 2020 **PLAGER SCHACK LLP**

By: /s/ *Mark H. Plager*
**Mark H. Plager**
**Michael L. Schack**
**Attorneys for Plaintiff, ALORICA INC.**