NANCY NGUYEN SIMS (SBN 215869)
nancy.sims@us.dlapiper.com
MICHAEL T. BOARDMAN (SBN 279153)
michael.boardman@us.dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Tel: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendants/Counterclaimants
The Boston Consulting Group, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ALORICA, INC., a Delaware corporation,

Plaintiff,

vs.

BOSTON CONSULTING GROUP, INC., a Massachusetts corporation, and BCG DIGITAL VENTURES,

Defendants.

THE BOSTON CONSULTING GROUP, INC., a Massachusetts corporation,

Counterclaimant,

v.

ALORICA INC., a Delaware corporation,

Counter-Defendant.

Case No.: 8:20-cv-01930

**THE BOSTON CONSULTING GROUP, INC.'S ANSWER AND COUNTERCLAIMS FOR:**

1. **Breach of Contract – Alpha Agreement**
2. **Breach of Contract – Beta Agreement**
3. **Breach of the Covenant of Good Faith and Fair Dealing**
4. **Fraud**
5. **Open Book Account**
6. **Account Stated**
7. **Goods and Services Rendered**
8. **Declaratory Relief**

**[DEMAND FOR JURY TRIAL]**

## ANSWER

Defendant and Counterclaimant The Boston Consulting Group, Inc.[1] ("BCG") hereby answers the First Amended Complaint ("FAC") filed by Plaintiff and Counter-Defendant Alorica, Inc. ("Alorica").

## THE PARTIES

1. On information and belief based on records available at the California Secretary of State records, BCG admits that Alorica is a Delaware corporation with its principal office located in Irvine, California.

2. BCG admits that it is incorporated in Massachusetts and conducts business at 200 Pier 4 Boulevard, Boston, Massachusetts 02210.

3. BCG admits that a division of its business, BCG Digital Ventures, has an office located at 1240 Rosecrans Avenue #600, Manhattan Beach, California 90266.

## JURISDICTION AND VENUE

4. The statements in paragraph 4 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 4, BCG denies those allegations.

5. The statements in paragraph 5 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 5, BCG denies those allegations.

## FIRST CAUSE OF ACTION

## FEDERAL DECLARATORY RELIEF

6. BCG admits that it entered into a Nondisclosure Agreement with Alorica, effective March 25, 2019, related to the development by BCG of an artificial

[1] Defendant "BCG Digital Ventures" is erroneously named as a party to this action. BCGDV is not an independent entity, but rather an operating division of Defendant BCG.

intelligence tool (the "AI Tool"). BCG denies the remaining allegations in paragraph 6.

7. Denied.

8. Denied.

9. BCG admits that a third party has had access to and used the AI Tool. BCG denies the remaining allegations in paragraph 9.

10. BCG admits that Jeff Hill sent an email on January 15, 2020 to Andy Lee and Dan Montenaro, copying others at BCG. BCG denies that the email contained any bold text or other emphasis, as included in the FAC, and denies that the email "acknowledged the existence of a joint venture between the Parties, and the value of each Parties' intangible contributions to the joint venture."

11. BCG admits that it discussed with Alorica that a portion of equity in a new entity would be reserved for an employee stock option plan. BCG denies the remaining allegations in paragraph 11.

12. Denied.

13. Denied.

14. BCG admits that it sent a letter to Alorica on October 2, 2020 requesting payment from Alorica for BCG's development of the AI Tool pursuant to the parties' agreements. BCG denies the remaining allegations in paragraph 14.

15. BCG responds that, consistent with its right to exclude under copyright and other applicable rights, it terminated Alorica's access to the AI Tool on or about November 6, 2020. BCG denies the remaining allegations in paragraph 15, including any implication that any customer of Alorica had direct access to the AI Tool at any time.

16. The statements in paragraph 16 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 16, BCG denies those allegations.

17. BCG admits that Alorica contends that it is entitled to access the AI Tool on BCG's computer servers and use it in perpetuity without providing any compensation for such access and use. BCG denies that Alorica's contentions have merit.

18. The statements in paragraph 18 are vague and unintelligible. BCG therefore denies them. Such statements also appear to contain legal conclusions which require no response. BCG denies the statements in paragraph 18 for that reason as well.

**SECOND CAUSE OF ACTION**

**INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

19. BCG restates its prior responses to paragraphs 1 through 18, as if fully set forth herein.

20. The statements in paragraph 20 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 20, BCG denies those allegations.

21. BCG lacks personal knowledge regarding the nature of any relationship between Alorica and its customers and therefore denies the allegations in paragraph 21. Further, the statements in paragraph 21 contain legal conclusions and therefore no response is required.

22. The statements in paragraph 22 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 22, BCG denies those allegations.

23. The statements in paragraph 23 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 23, BCG denies those allegations.

24. The statements in paragraph 24 are vague and unintelligible. BCG therefore denies them. Such statements also appear to contain legal conclusions

which require no response. BCG denies the statements in paragraph 24 for that reason as well.

25. The statements in paragraph 25 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 25, BCG denies those allegations.

26. The statements in paragraph 26 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 26, BCG denies those allegations.

## **THIRD CAUSE OF ACTION**

## **NEGLIGENT INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS**

27. BCG restates its prior responses to paragraphs 1 through 26, as if fully set forth herein.

28. The statements in paragraph 28 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 28, BCG denies those allegations.

29. The statements in paragraph 29 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 29, BCG denies those allegations.

30. The statements in paragraph 30 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 30, BCG denies those allegations.

31. The statements in paragraph 31 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 31, BCG denies those allegations.

32. The statements in paragraph 32 are vague and unintelligible. BCG therefore denies them. Such statements also appear to contain legal conclusions which require no response. BCG denies the statements in paragraph 32 for that

reason as well.

33. The statements in paragraph 33 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 33, BCG denies those allegations.

34. The statements in paragraph 34 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 34, BCG denies those allegations.

## FOURTH CAUSE OF ACTION

## CONVERSION

35. BCG restates its prior responses to paragraphs 1 through 34, as if fully set forth herein.

36. The statements in paragraph 36 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 36, BCG denies those allegations.

37. The statements in paragraph 37 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 37, BCG denies those allegations.

38. The statements in paragraph 38 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 38, BCG denies those allegations.

39. The statements in paragraph 39 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 39, BCG denies those allegations.

40. The statements in paragraph 40 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 40, BCG denies those allegations.

41. The statements in paragraph 41 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in

paragraph 41, BCG denies those allegations.

42. The statements in paragraph 42 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 42, BCG denies those allegations.

**FIFTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

43. BCG restates its prior responses to paragraphs 1 through 42, as if fully set forth herein.

44. The statements in paragraph 44 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 44, BCG denies those allegations.

45. The statements in paragraph 45 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 45, BCG denies those allegations.

46. The statements in paragraph 46 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 46, BCG denies those allegations.

47. The statements in paragraph 47 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 47, BCG denies those allegations.

48. The statements in paragraph 48 contain legal conclusions and therefore no response is required. To the extent there are any allegations of fact contained in paragraph 48, BCG denies those allegations.

The paragraphs set forth in the Prayer for Relief requested by Alorica do not require a response. To the extent a response is required, BCG denies any allegations contained in the Prayer for Relief.

BCG denies each and every allegation of the FAC not specifically admitted or otherwise responded to above. BCG further specifically denies that Alorica is

entitled to any relief of any kind against BCG as a result of any act of BCG or any person or entity acting on behalf of BCG.

**BCG's AFFIRMATIVE DEFENSES**

In further answer to the FAC, and as separate and distinct affirmative defenses, BCG alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

**Failure to State a Claim**

BCG alleges that neither the FAC nor any claim for relief therein states facts sufficient to state a claim against BCG.

**SECOND AFFIRMATIVE DEFENSE**

**Standing**

BCG alleges that Alorica lacks standing to bring some or all of the claims in its FAC.

**THIRD AFFIRMATIVE DEFENSE**

**No Causation**

BCG alleges that the harm Alorica alleges, to the extent it alleges any, was not legally caused by any action or inaction by BCG.

**FOURTH AFFIRMATIVE DEFENSE**

**Unclean Hands**

BCG alleges that the claims alleged in the FAC are barred, in whole or in part, by the doctrine of unclean hands in that Alorica failed to comply with its legal obligations and promises to BCG such that it is not entitled to any relief from BCG.

**FIFTH AFFIRMATIVE DEFENSE**

**Lawful Conduct**

BCG alleges that Alorica is not entitled to any relief from BCG as alleged because BCG's conduct is justified by law.

**<u>SIXTH AFFIRMATIVE DEFENSE</u>**

**Failure to Mitigate**

BCG alleges that to the extent that Alorica has failed to mitigate the harm or damages, if any, that BCG is alleged to have caused, such failure bars or diminishes their recovery against BCG.

**<u>SEVENTH AFFIRMATIVE DEFENSE</u>**

**Estoppel**

BCG alleges that Alorica's claims against BCG are barred by the doctrine of promissory and/or equitable estoppel.

**<u>EIGHTH AFFIRMATIVE DEFENSE</u>**

**Waiver**

BCG alleges that Alorica's claims are barred by the doctrine of waiver.

**<u>NINTH AFFIRMATIVE DEFENSE</u>**

**Good Faith**

BCG alleges that any acts alleged to have been committed by BCG were committed in the exercise of good faith, were not arbitrary or capricious, were based upon legitimate reasons, and were reasonable and justified under the circumstances.

**<u>ADDITIONAL AFFIRMATIVE DEFENSES</u>**

BCG reserves the right to assert additional affirmative defenses that may become available as a result of information learned and developed through discovery or trial. BCG hereby gives notice that it intends to rely upon such other and further affirmative defenses and reserves the right to amend this Answer to assert any such defenses.

## BCG'S COUNTERCLAIMS

BCG hereby asserts counterclaims against Alorica, as follows:

## NATURE OF THE ACTION

1. Although named as a defendant in this action, there is little question that BCG is the aggrieved party in its relationship with Alorica. Capitalizing on BCG's trust and then ultimately BCG's eagerness to reach an amicable resolution rather than engage in litigation with its clients, Alorica has, for over a year and a half, received the benefits of millions of dollars' worth of BCG's work on a project without paying a single cent to BCG. Alorica's debt to BCG is undisputed, but to avoid payment, Alorica has embarked on a campaign of delay, refusing to sign formal documents, and unnecessarily drawing out discussions. Alorica's conduct was far from in good faith.

2. Alorica strung along BCG for months and months with various excuses for why the parties' written agreement was not signed and why payment could not be made as promised, all the while coaxing and encouraging BCG to continue work. Now, nearly two years after the parties first commenced talks regarding this project, Alorica has yet to pay BCG anything. Nevertheless, Alorica seeks – and in fact, attempted to have this Court compel through an unsuccessful application for a temporary restraining order[2] – BCG's continued to work on this project for free. Alorica should not be allowed to benefit from its sly and deceitful conduct. It should be ordered to pay BCG for all amounts that it promised under the parties' agreements.

## THE PARTIES

3. BCG is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Boston, Massachusetts. BCG is a world-renowned business management consulting firm that is recognized as a leading provider of innovative business solutions and its

---

[2] The Court denied Alorica's TRO application in an Order dated October 8, 2020. (Dkt. 11.)

collaborative approach to complex business issues across a wide range of industries.

4. Alorica is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Irvine, California. Alorica provides customer experience management and business process solutions for companies' customer support operations.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367 in that it is so related to the claims over which this Court has diversity jurisdiction that it forms part of the same case or controversy.

6. There is complete diversity of citizenship between the parties.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and by virtue of Plaintiff's commencement of this action in this Court.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

8. In February 2018, Alorica hired BCG to build an artificial intelligence tool that could be used to improve customer service in call centers that Alorica operates on behalf of its clients (the "AI Tool"). BCG assigned a team of BCG engineers to the project, who exclusively wrote the code necessary to create the AI Tool and successfully tested the product in a live environment to support Alorica in the provision of its services for a single Alorica client. Alorica has never paid a single dollar to BCG for its work. In fact, since the successful testing of the product, BCG has continued to host, support, and maintain the AI Tool, despite Alorica's ongoing failure to pay BCG any money for its services. BCG has devoted and incurred substantial resources and costs to these efforts.

9. Consistent with BCG's typical business model, BCG's relationship with Alorica began as a services-for-hire arrangement. The arrangement also contemplated that the AI Tool development project would be phased, with each phase governed by separate statements of work and resulting fees. A portion of the fees incurred by BCG would be paid by Alorica immediately at the conclusion of the

respective phases. The remainder of the fees would be deferred and if certain conditions had been satisfied, converted into equity in a new entity to be formed by Alorica for the purpose of commercializing the AI Tool ("NewCo").

10. For the "Alpha" phase ("Alpha Phase"), the initially parties agreed that BCG would earn $3.5 million in fees, of which Alorica agreed to pay BCG $1.75 million at the conclusion of the phase. Another $1.75 million owed to BCG would be deferred and, once NewCo was formed, converted to equity in NewCo. BCG also had the opportunity to earn an additional $1.75 million if certain conditions were satisfied and, once NewCo was formed, this amount also would be converted to equity in NewCo. For the "Beta" phase ("Beta Phase"), which required substantially more work and out-of-pocket expenses, the parties agreed that BCG would earn $10 million in fees, of which Alorica again agreed to pay half at the conclusion of the phase, with the remaining $5 million to be deferred and converted to equity in NewCo once it was formed.

11. In addition to paying the fees described above, Alorica agreed to capitalize NewCo appropriately to fund successful ongoing operations, including an initial investment of $10 million. Following the Beta Phase, in exchange for the equity issued to BCG and based on Alorica's commitment to fund NewCo at an appropriate level going forward, BCG was to transfer control and ownership of the AI Tool to NewCo.

12. In reliance on these promises by Alorica, including by its Chief Executive Officer, Andy Lee, BCG successfully completed both the Alpha and Beta Phases. But despite clear and unambiguous promises, Alorica refused to sign formal documents memorializing the parties' agreement and, to this date, has not paid a cent to BCG for its work. Alorica also failed to form NewCo, failed to issue equity to BCG, and failed to contribute to NewCo the working capital required to operate and monetize the AI Tool.

13. Meanwhile, and despite only agreeing to *build* the AI Tool, BCG has

continued to *support* its ongoing operation, incurring substantial costs and expenses to do so. Alorica has reaped the benefit of BCG's ongoing support while continuing to use the AI Tool to service its client without providing any compensation to BCG or paying any of the related expenses. In short, Alorica owes substantial sums of money to BCG and refuses to pay.

## FIRST COUNTERCLAIM

### Breach of Contract – Alpha Agreement

14. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 13 as if set forth fully herein.

15. In or around February 2019, Alorica and BCG agreed to move forward with the Alpha Phase, in which BCG would create the AI Tool and deploy it to a limited number of call center employees. In exchange for BCG's work on the Alpha Phase, the parties agreed that BCG would be paid a portion of its upfront fees at the completion of the Alpha Phase. The parties agreed that the remainder of BCG's fees would be deferred until the parties formed NewCo. At that time, BCG's deferred fees would be contributed to the Newco and converted into an equity stake in NewCo corresponding to the value of BCG's unpaid fees. NewCo would be funded by Alorica and would own and market the AI Tool.

16. On or about March 5, 2019, BCG's team including Jeff Hill and Hicham Mhanna, met again with Alorica executives, including its CEO, Andy Lee, to discuss the parties' understandings with respect to the AI Tool project. On or about March 13, 2019, BCG executives again met with Mr. Lee and others at Alorica to confirm the parties' agreement with respect to the Alpha Phase. Based on these meetings, in which Alorica affirmed the terms of the parties' agreement, BCG continued developing the AI Tool.

17. On March 15, 2019, Jeff Hill sent a follow-up email to Mr. Lee, detailing the material terms of the parties' agreement, including that (1) the Alpha Phase would be a pilot phase, with 30 test users; (2) the Alpha Phase would last an estimated 12

weeks; (3) BCG's fees were to be paid by Alorica in the amount of $3.5 million, with $1.75 paid at the completion of the Alpha Phase, and $1.75 in the form of future equity in NewCo; (4) BCG would present certain Key Performance Indicators ("KPI") which, if met, would result in BCG's compensation being increased by an additional $1.75 million; and (5) the parties would work together to agree on terms for a second, Beta, phase. If the AI Tool met these benchmarks, BCG's compensation for the Alpha Phase would total $5.25 million.

18. BCG also circulated a Statement of Work in March 2019, which described the parties' oral agreements in detail, including the specifics of the KPIs. Alorica failed to sign that document, but it has never contested the material terms contained therein, including its agreement to pay $1.75 million in cash to BCG for its work at the conclusion of the Alpha Phase. The terms of the parties' agreement are clear, despite Alorica's refusal to execute formal documents officially memorializing them.

19. In addition, the Statement of Work provided that the parties contemplated moving on to a Beta Phase, but to the extent the parties did not elect to move forward with a Beta Phase, then BCG would retain all intellectual property rights associated with the AI Tool. Specifically, "if [Alorica] does not pay in full the amounts due . . . including the earned [deferred] Fees, then BCGDV will own all the intellectual property rights in the Deliverables."

20. Alorica, through its CEO, Andy Lee, and others at the executive level, orally confirmed and agreed to the above terms multiple times. For example, BCG representatives, Jeff Hill and Hicham Mhanna, met with Andy Lee and Alorica's counsel, Dan Montenaro, on or about March 25, 2019. At that meeting, Mr. Lee and Mr. Montenaro affirmed the contract as described in Mr. Hill's March 15, 2019 email and in the Statement of Work submitted by BCG (the "Alpha Agreement").

21. Given the fact that Jeff Hill and Andy Lee had worked together on prior deals, the parties had developed a working relationship that provided BCG with a

level of comfort that Alorica would honor its promises. In that regard, Mr. Lee and Alorica had similarly delayed in executing formal documents confirming the parties' contractual obligations, but nonetheless performed under their agreements, including the payment obligations.

22. In reliance on Alorica's promises, BCG undertook to develop the AI Tool pursuant to the Alpha Agreement.

23. The parties continued to meet in person and virtually to discuss the status of the Alpha Agreement through the spring and summer of 2019, during which Mr. Lee and others at Alorica continued to reaffirm the Alpha Agreement.

24. BCG performed all or substantially all of its obligations under the Alpha Agreement.

25. Indeed, BCG also hit all performance markers set by the parties for additional compensation. Mr. Lee confirmed that the KPIs were satisfied at a meeting on or around August 29, 2019. Therefore, as agreed-upon by the parties, BCG's fee increased to $5.25 million for the Alpha Phase.

26. Alorica breached the Alpha Agreement by failing to pay the amounts due to BCG.

27. As a direct and proximate result of Alorica's failure to pay and perform its obligations under the Alpha Agreement, BCG was harmed.

28. In addition, Alorica has been unjustly enriched by receiving the benefits of the AI Tool without paying for its use or development. These benefits not only include the value that the AI Tool has conferred on Alorica from its use, but also the value of BCG's efforts and expenses associated with continuing to maintain and service the AI Tool, which Alorica has forced BCG to perform and pay despite BCG never agreeing to take on such burdens.

## <u>SECOND COUNTERCLAIM</u>

### Breach of Contract – Beta Agreement

29. BCG hereby repeats and re-alleges the allegations set forth in

Paragraphs 1 through 28 as if set forth fully herein.

30. In a September 26, 2019 presentation sent to Alorica, BCG proposed the following material terms regarding the Beta Phase: (1) the Beta phase will last 20 weeks; (2) BCG will add and pay for 34 additional full-time employees to the AI Tool development team; (3) BCG's fee will be $10 million, with $5 million guaranteed and $5 million deferred; and (4) BCG's deferred fees would be invested and converted to equity in NewCo. The parties also agreed that Alorica would fund the ongoing operation of NewCo in order to effectively monetize the AI Tool. The terms regarding ownership of intellectual property rights for the work product developed in the Beta Phase would also remain the same as the Alpha Phase, with BCG maintaining ownership unless and until Alorica fully performed under the agreement.

31. BCG representatives, including Jeff Hill and Hicham Mhanna, then met with Andy Lee and Alorica representatives, on or about October 9, 2019, at Alorica's offices to discuss this proposal. Alorica did not modify any terms contained in BCG's offer. To the contrary, Mr. Lee confirmed at the October 9, 2019 in-person meeting and in writing on October 10, 2019 that the Beta Phase should go forward as explained in BCG's September 26, 2019 presentation (forming the "Beta Agreement").

32. BCG performed all or substantially all of its obligations under the Beta Agreement, including paying for all fees and expenses, hiring the required employees, and continuing to host the AI Tool. Indeed, BCG completed the Beta Phase on or about February 28, 2020.

33. Alorica breached the Beta Agreement by failing to pay the amounts due to BCG under that contract, failing to form NewCo, failing to fund NewCo, and failing to issue equity in NewCo to BCG.

34. As a direct and proximate result of Alorica's failure to pay and perform its obligations under the Beta Agreement, BCG has sustained and will incur further

damages, including but not limited to damages reflecting its fees and costs incurred to develop and operate the AI Tool, lost profits, lost business opportunities resulting from staff being unavailable to work on other projects, loss of value of the AI Tool itself, and damage to its goodwill in amounts to be proven at trial.

35. In addition, Alorica has been unjustly enriched by receiving the benefits of the AI Tool without paying for its use or development. These benefits not only include the value that the AI Tool has conferred on Alorica from its use, but also the value of BCG's efforts and expenses associated with continuing to maintain and service the AI Tool, which Alorica has forced BCG to perform and pay despite BCG never agreeing to take on such burdens.

## THIRD COUNTERCLAIM

### Breach of Covenant of Good Faith and Fair Dealing

36. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 35 as if set forth fully herein.

37. By its conduct, Alorica has deprived BCG of the benefits it reasonably expected to obtain at the time the Alpha Agreement and Beta Agreement (collectively, the "Agreements") were made.

38. By failing to pay fees indisputably owed to BCG, failing to form NewCo, failing to fund NewCo, and failing to issue equity in NewCo to BCG in amounts that would fairly compensate BCG for its deferred fees, and ongoing wrongful claim of co-ownership of the AI Tool despite not creating or paying for it, Alorica breached the covenant of good faith and fair dealing in the Agreements.

39. Further, Alorica has breached the covenant of good faith and fair dealing by refusing to execute written contracts, despite providing repeated oral confirmation of the terms of the parties' agreements. On information and belief, Alorica's refusal to execute written contracts was in bad faith and intended to provide an avenue to later attempt to modify or deny its promises after BCG had already relied upon them.

40. As a direct and proximate result of those breaches, BCG has sustained and will incur further damages, including but not limited to damages reflecting its fees and costs incurred to develop and operate the AI Tool, lost profits, lost business opportunities resulting from staff being unavailable to work on other projects, loss of value of the AI Tool itself, and damage to its goodwill in amounts to be proven at trial.

41. In addition, Alorica has been unjustly enriched by receiving the benefits of the AI Tool without paying for its use or development. These benefits not only include the value that the AI Tool has conferred on Alorica from its use, but also the value of BCG's efforts and expenses associated with continuing to maintain and service the AI Tool, which Alorica has forced BCG to perform and pay despite BCG never agreeing to take on such burdens.

**FOURTH COUNTERCLAIM**

**Fraud**

42. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 41 as if set forth fully herein.

43. On or around December 18, 2018, Alorica and BCG met at BCG's office in Manhattan Beach to discuss BCG's development of an artificial intelligence solution that would solve problems associated with Alorica's call centers. During this meeting, Mr. Lee instructed BCG to begin work on developing what would become the AI Tool.

44. During subsequent meetings, in February and March 2019, Mr. Lee and other Alorica executives confirmed that Alorica would pay to BCG its guaranteed fees of $1.75 million in cash at the conclusion of the Alpha Phase, and confirmed Alorica's commitment to pay the remainder of BCG's deferred fees for the Alpha Phase, as described above. Beginning in or around June 2019, Mr. Lee further promised that Alorica would pay to BCG $5 million in the form of a promissory note and an additional $5 million in deferred fees for BCG's work on the Beta Phase.

45. Alorica, via Mr. Lee, further promised to form NewCo, provide BCG an equity stake in NewCo in an amount equivalent to BCG's deferred compensation, and to contribute adequate operating capital to NewCo such that BCG could, at a minimum, recoup its deferred fees.

46. Not only did Alorica makes promises to BCG at the inception of the project, but it continued to reiterate these assurances during the pendency of the project. Specifically, Alorica coaxed and persuaded BCG to continue the development of the AI Tool, even though Alorica had failed to pay. Specifically, Alorica made the following misrepresentations:

a. June 12, 2019 – Alorica, through its Deputy General Counsel, Dan Montenaro, claimed that its CEO wanted to "focus on the tech" and that the business matters should be reserved for later in-person meetings.

b. February 11, 2020 – Dan Montenaro, confirms that Alorica agrees to BCG owning 20% of NewCo, Alorica owning 55% and 25% reserved for an employee stock option plan.

c. February 14, 2020 – Dan Montenaro confirms that Alorica will pay $1.75 million cash, $5 million via a promissory note for services rendered, and fund NewCo in the amount of $10 million over 12 months.

d. May 27, 2020 – Dan Montenaro again confirms via email to BCG that, "[a]s promised, I will deliver to you a proposed schedule for the $5M to be paid after the $1.75M initial payment."

e. June 4, 2020 – Dan Montenaro again explains that "[o]ur view is that after the initial $1.75M, the balance will be paid following the bridge phase and we suggest a 50 month window at $100K per month."

f. June 23, 2020 – Alorica's CEO, Andy Lee, confirms orally that $1.75 million in cash would be paid to BCG.

g. July 13, 2020 – Dan Montenaro confirms by email again that the parties are "agreed on the fact there will be no contingencies and that the $1.75

will be paid upon execution."

47. In reliance on Alorica's representations in 2018 and 2019, BCG created, developed, operated and serviced the AI Tool. Alorica's false representations also forced BCG to incur significant ongoing expense to maintain and operate the AI Tool, despite BCG never agreeing to take on such burdens.

48. In reliance on Alorica's representations in 2020, BCG, at its own expense, provided ongoing support for the AI Tool and continued to provide Alorica with the ability to use it to support and enhance its relationship with its clients.

49. Alorica's promises were false. Alorica has not performed on its promises to pay BCG for the development or use of AI Tool, form NewCo, fund NewCo, or issue any equity in NewCo to BCG. In fact, Alorica never intended to perform these promises, which were made for the purpose of inducing BCG to create the AI Tool, to continue to service it, and to provide Alorica continued access to and use of the AI Tool.

50. On information and belief, Alorica never intended to pay the money it promised to pay BCG because it had always intended instead to reserve those funds to support an application by Alorica to refinance its corporate debt. On information and belief, Alorica began the refinance process in the summer/fall of 2019 and knew at that time – including when it promised to perform under the Alpha Agreement and entered into the Beta Agreement – that Alorica would, in fact, not make funds available to distribute to BCG. Rather, Alorica intended to reserve those assets to show financial strength in order to obtain its new loan. On information and belief, Alorica also knew, in 2020, when it continued to promise to pay amounts to BCG and to fund NewCo pursuant to the Alpha Agreement and Beta Agreement, that in fact Alorica intended to continue to reserve its available cash and/or assets to support its loan application rather than to meet its obligations under those agreements.

51. Alorica's fraudulent intent is also demonstrated by its ongoing conduct. **First**, immediately after making the promises described above, Alorica refused – and

continues to refuse – to sign formal documents memorializing its agreements. **Second**, Alorica, with no justification, has refused and continues to refuse to pay BCG its guaranteed fees ($1.75 million for the Alpha Phase, plus $5 million for the Beta Phase, for a total of $6.75 million). **Third**, Alorica has failed to take any material steps toward the formation of NewCo, including making any effort to negotiate the terms of BCG's equity or capital structure of NewCo. Instead, Alorica has created undue delay, through a variety of excuses. Indeed, for over eight months, Alorica consistently either ignored BCG's proposals or asked for more time to review them, refusing to engage substantively in negotiations. And, rather than follow through on promises it has made and cannot dispute, Alorica now attempts to rewrite history, claiming that the parties had at all times entered into a joint venture. This allegation is made in bad faith and intended not only to avoid payment by manufacturing a dispute that would delay resolution of this issue, but also to prevent BCG from selling or otherwise monetizing the AI Tool by improperly clouding its title.

52. Meanwhile, having made false promises and then generated undue delay to avoid having to comply with them, Alorica has continued to receive the benefit of the AI Tool for free and at BCG's expense. Alorica had no intention of following through on its promises at the time they were made and, in addition to all of its prior efforts to delay, has now invented new allegations of a joint venture in an attempt to avoid doing so.

53. None of these facts were known to BCG at the time and BCG reasonably relied on Alorica's representations given the history between the parties and the fact that in prior dealings, Alorica had similarly delayed to execute written agreements but ultimately performed on its promises to pay.

54. As a direct and proximate result of Alorica's fraudulent misrepresentations, BCG has sustained and will incur further damages, including but not limited to damages reflecting its fees and costs incurred to develop and operate

the AI Tool. In addition, because BCG continued to maintain and support the AI Tool following the completion of the Beta Phase, BCG has sustained additional losses from the fees incurred since in around April 2020.

55. In addition, Alorica has been unjustly enriched by receiving the benefits of the AI Tool without paying for its use or development. These benefits not only include the value that the AI Tool has conferred on Alorica from its use, but also the value of BCG's efforts and expenses associated with continuing to maintain and service the AI Tool, which Alorica has forced BCG to perform and pay despite BCG never agreeing to take on such burdens.

56. On information and belief, Alorica's false representations were intentional, malicious, and in bad faith and have subjected and will continue to subject BCG to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages according to proof at trial. Indeed, as described herein, Alorica has consistently and willfully misled BCG for almost two years without justification in order to obtain benefits for itself at BCG's significant expense. And, not only that, but Alorica has more recently taken affirmative steps not only to reap benefits for itself, but to block BCG from taking action on its own behalf to mitigate the harm Alorica has caused.

## FIFTH COUNTERCLAIM

### Account Stated

57. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 56 as if set forth fully herein.

58. As set forth above, BCG has performed significant work to develop, maintain, and operate the AI Tool. With respect to maintenance and operation, Alorica's delays and bad faith allegations have forced BCG to perform this work despite BCG never agreeing to take on such burdens.

59. BCG and Alorica agreed, by both words and conduct, that BCG would earn a total of $15.25 million in fees for its work on the Alpha and Beta Phases.

60. Alorica agreed to compensate BCG for the above amount.

61. Notwithstanding its agreement to pay, Alorica has failed to remit any portion of the $15.25 million due and owing to BCG for its work on the AI Tool.

**SIXTH COUNTERCLAIM**

**Open Book Account**

62. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 61 as if set forth fully herein.

63. BCG and Alorica had financial transactions together, including in the development, implementation, and maintenance of the AI Tool.

64. BCG, in the regular course of business, kept an account of the debits and credits of the relationship. In particular, BCG recorded its fees incurred in connection with its work on the AI Tool, which total $15.25 million.

65. Alorica owes money to BCG on its account. In fact, Alorica has not paid any amounts to BCG related to the AI Tool that would constitute a credit on its account.

66. As a result, Alorica owes BCG $15.25 million in unpaid fees for work conducted through April 2020, as well as additional amounts incurred by BCG to maintain and operate the AI Tool after that time.

**SEVENTH COUNTERCLAIM**

**Goods and Services Rendered**

67. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 66 as if set forth fully herein.

68. As explained above, Alorica requested that BCG create, develop and deliver the AI Tool for the benefit of Alorica.

69. BCG performed the services and delivered the AI Tool as requested.

70. Alorica has not paid for BCG's services or use of the AI Tool.

71. The reasonable value of BCG's work to create, develop, and maintain the AI Tool exceeds $20 million. As explained above, Alorica previously agreed that

BCG's fees following the Alpha and Beta Phases totaled $15.25 million. In addition, since the conclusion of the Beta Phase, BCG continued to provide ongoing support and maintenance for which it must be compensated by Alorica. Although BCG will prove up these expenses at trial, the amount is believed to exceed an additional $5 million.

## EIGHTH COUNTERCLAIM

### Declaratory Relief

72. BCG hereby repeats and re-alleges the allegations set forth in Paragraphs 1 through 71 as if set forth fully herein.

73. An actual controversy exists over BCG's rights to deny Alorica access to the AI Tool. Alorica claims that it is entitled to some form of control over and continued usage of the AI Tool. Alorica, however, has no such rights. Alorica did not invent, create or otherwise develop the AI Tool such that it would have any intellectual property rights in the AI Tool, nor did Alorica ever pay for the assignment of, or a license to, any intellectual property rights associated with the AI Tool. Indeed, in agreeing to the terms of the Alpha Agreement, Alorica already agreed that its failure to pay results in BCG maintaining full intellectual property ownership.

74. Therefore, as sole owners of the copyright and any related intellectual property rights associated with the AI Tool, BCG retains an unfettered right to exclude Alorica from accessing or using the AI Tool.

75. Alorica's demands to retain access to and use the AI Tool are impairing BCG's ability to monetize the tool and recoup money to compensate for its time and resources devoted to the development of the tool. BCG, therefore, seeks a judicial determination that BCG is the sole and rightful owner of the AI Tool, such that it could properly exclude Alorica from its use and exploitation.

## PRAYER FOR RELIEF

WHEREFORE, BCG prays for judgment and relief against Alorica as follows:

1. For judgment in favor of BCG and against Alorica on all causes of action

in the FAC and BCG's Counterclaims;

2. For damages, including lost profits, according to proof in an amount in excess of the jurisdictional requirements;

3. For restitution and disgorgement of all ill-gotten gains and unjust enrichment as set forth herein, in an amount to be proven at trial, but at least in excess of the jurisdictional requirements;

4. For exemplary damages in an amount to be proven at trial;

5. For a declaratory judgment that BCG is the sole owner of all intellectual property rights associated with the AI Tool;

6. For prejudgment and post-judgment interest at the maximum legal rate, as provided by California law, as applicable, as an element of damages which BCG has suffered as a result of Alorica's wrongful and unlawful acts;

7. For costs of suit; and

8. For any other and further relief that the Court may deem just and proper.

Dated: November 20, 2020 **DLA PIPER LLP (US)**

By: /s/ Nancy Nguyen Sims

NANCY NGUYEN SIMS
MICHAEL T. BOARDMAN
Attorneys for Plaintiff/Counterclaimant
THE BOSTON CONSULTING GROUP, INC.

## REQUEST FOR JURY TRIAL

BCG hereby demands a trial by jury on all issues in this action which are so triable.

Dated: November 20, 2020

**DLA PIPER LLP (US)**

By:/s/ Nancy Nguyen Sims
NANCY NGUYEN SIMS
MICHAEL T. BOARDMAN
Attorneys for Plaintiff/Counterclaimant
THE BOSTON CONSULTING GROUP, INC.